**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

LEQUOIA PETERSON,
    Appellant,

   v.

SOCIAL SECURITY
  ADMINISTRATION,
     Agency.

DOCKET NUMBER
AT-0752-24-0306-I-1

DATE:  August 4, 2026

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Adam Paul Morel</u>, Esquire, Birmingham, Alabama, for the appellant.

<u>Jacob M. Mikow</u>, Esquire, Oakland, California, for the agency.

<u>Natalie Liem</u>, Esquire, Atlanta, Georgia, for the agency.

<u>Nathan S. Gillespie</u>, Esquire, and <u>Carrie Bumgardner</u>, Esquire,
  Baltimore, Maryland, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**REMAND ORDER**

  The agency has filed a petition for review of the initial decision, which found that the appellant proved her affirmative defenses of sex and disability

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

discrimination, and of reprisal for equal employment opportunity (EEO) activity, and reversed her removal on that basis. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision's finding that the agency did not prove its falsification charge but AFFIRM the findings sustaining the lack of candor charge, REVERSE the initial decision's findings of disability discrimination and retaliation, VACATE the initial decision's finding of sex discrimination, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The agency employed the appellant as a GS-9 Claims Specialist in Covington, Georgia. Initial Appeal File (IAF), Tab 9 at 90-91. In May 2020, the appellant had non-job-related surgery at JourneyLite For Life, also known as JourneyLite Surgery Center (JLSC). IAF, Tab 31-8, Hearing Transcript (HT) at 38 (testimony of S.P.), 169 (testimony of the JLSC Administrator), 199 (testimony of the appellant).[2] JLSC is a facility that only performs surgery. HT at 12 (testimony of S.P.), 160-62 (testimony of the JLSC Administrator). The anesthesiologist for the appellant's May 2020 surgery was S.P., who is also the appellant's brother. IAF, Tab 22 at 18-54; HT at 18, 37-38, 48 (testimony of S.P.), 204-05 (testimony of the appellant). The appellant did not receive any follow up or other medical care from JLSC following her surgery. HT at 171 (testimony of the JLSC Administrator), 199-200 (testimony of the appellant).

---

[2] Although the parties have not indicated the nature of the surgery, witness S.P. testified that JLSC generally performs "bariatric" surgery. HT at 12 (testimony of S.P.). Such surgery relates to "the prevention and control of obesity and allied diseases." Stedman's Medical Dictionary § B4310 (defining "bariatrics" as "[t]hat branch of medicine concerned with the prevention and control of obesity and allied diseases"), available in Westlaw (database updated January 2025); see 5 C.F.R. § 1201.64 (permitting the Board and administrative judges to take official notice of matters of common knowledge or matters that can be verified). Based on the nature of the surgery and the lack of any claim by the appellant to the contrary, we conclude that the surgery in question was not job-related.

S.P. last performed services at JLSC sometime in 2020 or 2021. HT at 47-48 (testimony of S.P.), 177 (testimony of the JLSC Administrator).

On February 22, 2022, the appellant requested a reasonable accommodation of full-time telework due to her medical conditions, including "[g]oiter, anxiety, claustrophobia, bronchitis, congestive heart failure, and chronic [hypertension]." IAF, Tab 9 at 157, Tab 22 at 58. In support of her reasonable accommodation request, the appellant submitted letters from S.P., including a letter on JLSC letterhead dated March 18, 2022. IAF, Tab 22 at 58-61. On September 8, 2022, the agency denied the appellant's request for full-time telework because it was not supported by her medical documentation. IAF, Tab 9 at 157-61. The agency provided an alternative accommodation that included providing the appellant with a private office and an air purifier. *Id.* at 160-61.

The appellant asked the agency to reconsider its decision denying full-time telework on three occasions between September 2022 and January 2023. *Id.* at 139, 150, 154. The agency declined these requests. *Id.* at 139-42, 150-55. In support of her reconsideration requests, the appellant submitted to the agency's National Reasonable Accommodation Coordinator (NRAC) additional medical letters from S.P. on JLSC letterhead dated September 20, 2022, and January 20, 2023. IAF, Tab 9 at 136-38, 145, 154, Tab 22 at 14-16. The NRAC raised concerns about the authenticity of one of the letters to the appellant's first-level supervisor. IAF, Tab 9 at 134-35. In response to these concerns, a Labor Relations Specialist (LRS) from the agency's Center for Human Resources, Labor Management and Employee Relations Team, began an investigation. *Id.* at 119, 133-34.

The LRS contacted JLSC to verify the authenticity of S.P.'s medical letters, and JLSC responded that "[n]one of these documents are from [JLSC]." IAF, Tab 22 at 55-63. As a result of learning of S.P.'s improper use of its letterhead, JLSC decided not to recredential S.P. to work at JLSC. HT at 179 (testimony of the JLSC Administrator).

On February 28, 2023, the appellant's first-level supervisor conducted an investigative interview with the appellant regarding her submission of S.P.'s letters. IAF, Tab 9 at 121-27. At some point, the appellant's sixth-level supervisor, Area Director of Operations, C.N., held a meeting to discuss the appellant's potential discipline associated with her submission of the letters. HT at 119-21 (testimony of the proposing official). Present at the meeting were the appellant's first-level supervisor, who was also the proposing official regarding any discipline issued to the appellant; the appellant's second-level supervisor, R.H., who was the deciding official; the LRS who had contacted JLSC; and others. HT at 78, 80-85, 89 (testimony of R.H.), 119-21 (testimony of the proposing official), 146-49 (testimony of the LRS). During that meeting, the attendees agreed that removal was the appropriate level of discipline for the appellant's misconduct. HT at 78-85, 96 (testimony of R.H.), 121-25 (testimony of the proposing official), 149-51 (testimony of the LRS).

On April 10, 2023, the appellant's first-level supervisor issued the appellant a notice of proposed removal based on charges of falsification and lack of candor. *Id.* at 107-18. The falsification charge concerned four instances between March 2022 and March 2023 when the appellant submitted the medical letters from S.P. on JLSC letterhead dated March 18 and May 13, 2022, and January 20, 2023, in support of her reasonable accommodation request. *Id.* at 107-08. Specifically, the agency alleged that the appellant knew the letters were not from JLSC and submitted them to mislead the agency. *Id.*

The lack of candor charge contained five specifications regarding statements that the appellant made during her first-level supervisor's February 28, 2023 investigative interview, which the agency alleged she knew not to be true. *Id.* at 108. The statements included the appellant representing that S.P. was her doctor at JLSC and that she had been treated at JLSC within the last 3 or 4 weeks. *Id.* at 108, 121-23. They also included the appellant's denials that she had a personal relationship with S.P., that she ever submitted a forged or

misleading statement to the agency, and that she submitted fabricated medical documents to the NRAC. IAF, Tab 9 at 108, 123, 126-27.

On June 16, 2023, the appellant's second-level supervisor, R.H., issued a decision that sustained the charges and specifications as stated in the proposal and removed the appellant. *Id.* at 91-102. The appellant's removal was effective that day. *Id.* at 90, 98.

The appellant timely filed this appeal, challenging her removal and alleging that the agency retaliated against her for making a reasonable accommodation request and discriminated against her based on her disability. IAF, Tab 1 at 2, Tab 11. She requested a hearing. IAF, Tab 1 at 1. Both parties sought R.H.'s testimony at the hearing, and the administrative judge approved her as a joint witness. IAF, Tab 19 at 8, Tab 21 at 16, Tab 27 at 5.

After the prehearing conference, in which the issues in the appeal were decided, but before the hearing itself, R.H. emailed the administrative judge asking to be excused from testifying. IAF, Tab 29. She stated that her manager had directed her to testify or she would "face disciplinary actions" although her "disabled son ha[d] an eye doctor's appointment" on the morning of the hearing. *Id.* In the email, she stated that on another occasion, C.N. did not allow R.H. to initiate discipline against a male supervisor who "failed to follow directives, falsified timesheets, falsified financial remittance records and . . . recorded meeting notes which never actually occurred." *Id.* at 2-3. R.H. alleged she also had been treated poorly by her former manager and was pursuing EEO, Office of Special Counsel, and Board cases against the agency. *Id.*

The administrative judge entered the email into the record and held a status conference the next day. IAF, Tab 30. At the conference, the agency orally moved to amend its list of witnesses to include C.N. to refute R.H.'s allegations in her email, but the administrative judge denied the request, finding that allowing the agency to call "a previously unannounced witness in order to rebut the testimony of one of its own witnesses would be potentially prejudicial to the

appellant." *Id.* Five days later, the administrative judge held a hearing. IAF, Tab 31. At the hearing, but before going on the record, "the parties and [the administrative judge] discussed the addition of the [sex] discrimination affirmative defense based on [R.H.'s] post prehearing conference email." HT at 6 (statement of the administrative judge on the record). The administrative judge added an affirmative defense of sex discrimination to the issues to be heard at the hearing over the agency's objection. *Id.* at 6, 92.

Following the hearing, the administrative judge issued an initial decision that reversed the appellant's removal. IAF, Tab 32, Initial Decision (ID). He found that the agency did not prove its falsification charge. ID at 3-5. He sustained specifications 2 and 5 of the lack of candor charge, but he did not sustain specifications 1, 3, or 4 of that charge. ID at 5-8. He found that the appellant proved her EEO reprisal and disability discrimination claims as to the falsification charge and the three unsustained specifications of the lack of candor charge. ID at 11-13. Further, the administrative judge found good case for the untimely addition of the affirmative defense of sex discrimination and held that the appellant proved that sex discrimination was a "but for" cause of her removal. ID at 13-16 & n.12. The administrative judge reversed the appellant's removal based on all three affirmative defenses. ID at 16.

The agency has timely filed a petition for review. Petition for Review (PFR) File, Tab 1.[3] It disputes the administrative judge's construction of its falsification charge, and it argues that he did not apply the appropriate legal standard for the affirmative defenses of disability discrimination and retaliation. *Id.* at 8-18. The agency also argues that in finding that the appellant proved her claim of sex discrimination, the administrative judge improperly credited R.H.'s testimony. *Id.* at 18-24, 31-32. Also, as to the sex discrimination claim, the

---

[3] With its petition for review, the agency submitted a certification of compliance with the administrative judge's interim relief order, and the appellant does not dispute the agency's certificate of compliance. PFR File, Tab 1 at 34-47.

agency argues that the administrative judge abused his discretion by permitting the appellant to raise the issue for the first time at the hearing over the agency's objection and by denying the agency's request to call C.N. to rebut R.H.'s testimony. The appellant has responded to the petition for review, and the agency has replied. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved its falsification charge.[4]

On review, the agency argues that the administrative judge misconstrued the charge of falsification. PFR File, Tab 1 at 9. In support of this charge, the agency alleged that on four occasions between March 2022 and March 2023, the appellant provided to the agency letters "purportedly from [her] treatment provider [JLSC] in support of [her] request for a reasonable accommodation. [She] knew [JLSC] had not provided [these letters] and [she] submitted [them] with the intention to mislead the agency." IAF, Tab 9 at 107-08. The administrative judge found that to sustain the charge as written, the agency was required to prove that appellant must have known that it was improper for S.P., although credentialed at the time to perform services at JLSC, to use JLSC letterhead. ID at 5. We agree with the agency that the administrative judge misconstrued the falsification charge as requiring more than the agency alleged in the proposal notice. We reverse his determination that the agency did not prove this charge, and we sustain the falsification charge.

To establish a charge of falsification, the agency must prove by preponderant evidence that the appellant: (1) supplied wrong information; and (2) knowingly did so with the intention of defrauding, deceiving, or misleading the agency for her own private material gain. *Boo v. Department of Homeland*

---

[4] The parties do not dispute, and we find no error in, the administrative judge's determination that the agency proved two of its five specifications in support of its lack of candor charge and, as a result, proved the charge as a whole. ID at 5-8. Therefore, we affirm that finding.

*Security*, 122 M.S.P.R. 100, ¶¶ 10-12 (2014). Generally, in an adverse action appeal taken under chapter 75, like this one, the agency must prove its charge by preponderant evidence. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 17. The administrative judge did not address the first element of the charge. However, he suggested that the question was beyond the scope of the Board's proceedings and one best answered by "the medical community." ID at 5.

The agency's charge squarely places before the Board the question of whether the appellant provided incorrect information to the agency by submitting medical documentation on JLSC letterhead. Therefore, we address that question here. Although each letter has a version of JLSC letterhead, none were from JLSC. IAF, Tab 9 at 137-38, 145, 156, Tab 22 at 55, 58; HT at 60 (testimony of S.P.), 175-78 (testimony of the JLSC Administrator). Therefore, we find that the agency proved that, as alleged in the charge, that the appellant provided incorrect information, i.e., letters purporting to be from JLSC that were not from that institution.

Having found that the agency proved the first element of the charge, we turn to the second element, which concerns the appellant's intent. The administrative judge improperly interpreted the charge as requiring that the agency prove that the appellant knew that S.P. was not authorized to use JLSC letterhead. ID to 4-5. The administrative judge's construction of the falsification charge was in error because it required the agency to prove more than what it charged in its proposal notice. *Martin v. Department of the Air Force*, 67 M.S.P.R. 309, 312 (1995) (finding that an administrative judge improperly construed an agency's charge in a way that required it to prove that an appellant's conduct was unethical, immoral, or indecent, when the agency charged only that the appellant's conduct could be construed as such). Because the agency made no allegations regarding S.P.'s intent in its falsification charge, his intent is irrelevant. IAF, Tab 9 at 107-08.

Instead, the agency alleged that the appellant submitted letters purporting to be from JLSC in support of her request for reasonable accommodation that she knew were not from that institution. *Id.* Proving the intent element requires the two following distinct showings: (1) that the employee intended to deceive or mislead the agency; and (2) she intended to defraud the agency for her own private material gain. *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008). Because there is seldom direct evidence on the issue of intent, circumstantial evidence must generally be relied upon to establish intent. *Ellis v. U.S. Postal Service*, 121 M.S.P.R. 570, ¶ 9 (2014). An appellant's intent to defraud or mislead the agency may be established by circumstantial evidence or inferred when the misrepresentation is made with a reckless disregard for the truth or with conscious purpose to avoid learning the truth. *Boo*, 122 M.S.P.R. 100, ¶ 10. Although the Board may consider plausible explanations for an appellant's provision of incorrect information in determining whether a misrepresentation was intentional, the absence of a credible explanation for the misrepresentation can constitute circumstantial evidence of an intent to deceive. *Ellis*, 121 M.S.P.R. 570, ¶ 9. Thus, here the agency was required to provide circumstantial evidence that the appellant knew or consciously avoided knowing that the letters were not from JLSC and that she submitted them in order to defraud, deceive, or mislead the agency for her own material gain. *Boo*, 122 M.S.P.R. 100, ¶ 11. We find that the agency has met this burden.

The appellant received no medical care from JLSC following her May 2020 surgery. HT at 169-72 (testimony of the JLSC Administrator), 199-200, 202 (testimony of the appellant). The medical documentation at issue in the falsification charge was dated March 18, 2022, September 20, 2022, and January 20, 2023, more than a year after the appellant's surgery at JLSC.[5] IAF,

---

[5] The appellant testified that she had a follow-up appointment with the surgeon who performed the procedure at JLSC, but the appointment was not at JLSC, and S.P. was not the surgeon in question. HT at 170-71 (testimony of the JLSC Administrator), 203-04 (testimony of the appellant).

Tab 9 at 107-08, 137-38, 145, 156, Tab 22 at 58.  On March 18, 2022, the date of the first letter at issue in the charge, the appellant texted S.P. on his personal phone, "Good morning Bro.  I need my letter Bro."  IAF, Tab 22 at 23.  He responded, "Sis, my bad.  I'll work on it in between patients[,]" to which the appellant responded, "No worries just giving you a hard time."  *Id.*; HT at 50 (testimony of S.P.).  S.P. provided the appellant with the March 18, 2022 letter on JLSC letterhead.  HT at 53 (testimony of S.P.); IAF, Tab 22 at 6-7.

On September 8, 2022, the agency denied the appellant's reasonable accommodation request for full-time telework.  IAF, Tab 9 at 157-61.  Eight days later, on September 16, 2022, the appellant texted S.P.:

> Good morning brother when you get the chance hit me up I have updated info from work about my [reasonable accommodation request].  They emailed me a document I want you to see.  I'm logged in at work at the moment and more than likely the[y] can hear everything around me [laugh out loud].

IAF, Tab 22 at 24.  The appellant and S.P. texted each other between September 16 and 19, 2022.  *Id.* at 24-29.  At one point, S.P. expressed his belief that the agency had "satisfied [its] legal responsibilities" to the appellant.  *Id.* at 27.  The appellant responded that "[t]here ha[d] been drastic changes since this notice" and that she was being required to report to work in person later that month.  *Id.* at 27-28.  On September 20, 2022, S.P. emailed the requested documentation to the appellant's personal address.  *Id.* at 8-9.  The September 20, 2022 letter is the second letter mentioned in the agency's charge. IAF, Tab 9 at 107.  The appellant submitted a version of this letter to the agency. IAF, Tab 22 at 14-16.

The third and final letter at issue is dated January 20, 2023.  IAF, Tab 9 at 107-08.  Preceding this letter, the appellant texted S.P. that the agency's alternative reasonable accommodation of a private room with an air filter was insufficient.  *Id.* at 33-34.  On January 20, 2023, S.P. provided the requested letter to the appellant.  IAF, Tab 9 at 143-44, Tab 22 at 37-39; HT at 57

(testimony of S.P.). The JLSC letterhead on the letter had clearly been altered. IAF, Tab 9 at 134, 143-44. For example, neither the header nor footer of the letterhead were properly centered, and the header differed from the prior letters from S.P. *Id.* Certain portions of the phrase "Journey Lite for Life" were repeated in the header in different sizes, and on different lines. *Id.* at 143. Read together, the name of the institution was improperly stated on the letterhead as "JOURNEYYLITE FOR LIFE.$^{SM}$ LIT." *Id.* JLSC's name on S.P.'s prior letters was listed as "JOURNEYLITE FOR LIFE.$^{SM}$" IAF, Tab 9 at 156, Tab 22 at 58. The appellant submitted this letter to the agency twice, once on January 31, 2023, and again on March 3, 2023. IAF, Tab 9 at 92, 139-40; HT at 210-11 (testimony of the appellant).

At a minimum, the appellant recklessly disregarded that the medical notes she submitted to the agency improperly reflected that JLSC provided her care. The only medical care that the appellant received at JLSC was a surgery performed at least a year before the dates on the medical letters from S.P. Additionally, the appellant sought the medical documentation directly from S.P. rather than going through JLSC. She asked S.P. to provide the letters via personal text and she addressed him in his capacity as her brother. Specifically, she greeted him as "bro" and "brother" in her texts to him, and he referred to her as "sis." One of the letters that she submitted to the agency was on clearly altered JLSC letterhead. A reasonable person in her situation would have questioned the use of JLSC stationery and inquired further.

Although the forgoing evidence is sufficient to establish intent to deceive, we also find that the appellant's intent to misrepresent this medical documentation as coming from JLSC is reflected by her own explanations and statements regarding her conduct. For example, the administrative judge found in connection with the lack of candor charge that the appellant gave an "incorrect impression" when she told the proposing official during her February 28, 2023 investigative interview that she had an appointment at JLSC 3 to 4 weeks prior.

IAF, Tab 9 at 122; ID at 6-7. Other statements in the investigative interview by the appellant reflect an attempt to conceal that S.P. was not treating her at JLSC, such as her claim that S.P. continued to treat her at that institution, that she referred to S.P. as "Dr. Price," and that she did not have a personal relationship with him. IAF, Tab 9 at 122-23; ID at 8.

Finally, we turn to whether the appellant sought material gain through her misrepresentation. The administrative judge did not address whether the agency proved this element of intent. We find that it did so.

Material gain is not limited to monetary gains arising from a falsification, but it can include offers of employment, preventing the agency from taking disciplinary or corrective action, and using sick leave versus unpaid leave. *Boo*, 122 M.S.P.R. 100, ¶ 13. Here, the private material gain element is satisfied because the appellant submitted the doctor's notes in furtherance of her reasonable accommodation request for full-time telework. This benefit of employment was not otherwise available to her; the agency's telework policy limited her to 2 days of telework per week. IAF, Tab 9 at 157. Therefore, the agency has proven that the appellant intended to defraud, deceive, or mislead the agency for her own material gain.

## We reverse the administrative judge's finding that the appellant proved her affirmative defense of retaliation for requesting a reasonable accommodation.

The administrative judge observed that because the appellant was alleging that she was removed for requesting a reasonable accommodation, it was appropriate to analyze both of her disability discrimination claims together. ID at 11. We agree. IAF, Tab 19 at 7, Tab 27 at 4 n.1. We further clarify that the claim asserted by the appellant is, in fact, a single affirmative defense of reprisal for engaging in the protected activity of requesting a reasonable accommodation. The appellant did not separately raise a claim that she was removed based on her status as disabled, and she did not assert a claim that the agency failed to accommodate a disability. ID at 11-13; IAF, Tab 27 at 4 n.1.

The agency disputes the legal standard that the administrative judge applied to the appellant's reprisal claim. PFR File, Tab 1 at 15-16. We agree with the agency. We reverse the administrative judge's conclusion that the appellant proved that she engaged in protected activity. ID at 11.

Requesting reasonable accommodation is an activity protected by the Rehabilitation Act of 1973. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 44; *see* Equal Employment Opportunity Commission, Enforcement Guidance on Retaliation and Related Issues, No. 915.004, § II(A)(2)(e) (Aug. 25, 2016) (EEOC Guidance) (stating that oppositional activity for which an employee is protected from reprisal includes requesting a reasonable accommodation). However, an employee alleging retaliation has the burden of proving that she had a good faith reasonable belief that she requested a reasonable accommodation. *Henry S. v. Department of Defense*, EEOC Appeal No. 0720170020, 2018 WL 1737443, at *14 (Mar. 28, 2018); EEOC Guidance, § II(A)(2) (explaining that "[t]he protection for opposition is limited . . . to those individuals who act with a reasonable good faith belief that a potential EEO violation exists and who act in a reasonable manner to oppose it"). To meet this requirement, the employee's belief must be both objectively and subjectively reasonable. *Henry S.*, 2018 WL 1737443, at *14.

As noted above, the appellant did not pursue a claim that she was denied a reasonable accommodation in the instant appeal. Further, the documentation in the record belies her claim to the agency that she needed to telework or that the agency's alternative accommodation of a private office with an air purifier was unreasonable. In May 2022, S.P. completed a medical form stating that the appellant required a working environment in which she did not need a mask and was provided with air filtration. IAF, Tab 22 at 61. While S.P. stated that "teleworking is the perfect solution" in his letter, he did not state it was the only solution. *Id.* In September 2022, S.P. advised the appellant via private text message that the agency's alternative reasonable accommodation of a private

office with an air purifier appeared to have satisfied its "legal responsibilities." *Id.* at 27. When the appellant later expressed her belief that the accommodations were insufficient, he responded, "Don't be too harsh" on the agency. *Id.* at 34. These responses from S.P. would have caused a reasonable person in the appellant's position to doubt her insistence on telework as the only acceptable reasonable accommodation.

Further undermining the reasonableness of her belief, the agency addressed the appellant's stated concerns regarding her request to telework in its responses to her reasonable accommodation request and requests for reconsideration. IAF, Tab 9 at 139-42, 150-55, 157-61. For example, the agency permitted her to take additional unpaid breaks as needed to "to step away from [her] workstation and get fresh air"; explained that her concerns about other employees entering her office space were due to her failure to place on her door a colored sign that the agency had provided to her; provided additional information regarding the ventilation system in the appellant's assigned office; and offered her a different office. *Id.* at 140, 152, 160. The appellant has not challenged in the instant appeal the accuracy of the agency's explanations for its actions or the sufficiency of its filtration system. She also has not alleged here that her request for full-time telework was reasonable or necessary to accommodate her medical condition.

Perhaps most fundamentally, the appellant's submission of documentation in support of her reasonable accommodation request that suggested she received treatment at JLSC evidences that she did not have a subjective belief that her request for full-time telework was reasonable. It is unlikely that she would need to submit false information to the agency if her need for full-time telework was legitimate. In sum, the appellant has not proven that she had a reasonable good faith belief that she requested a reasonable accommodation. Accordingly, she has not proven that she engaged in protected activity, and we reverse the administrative judge's determination that the appellant established her retaliation

claim. In light of this finding, we do not address the agency's alternative argument that, assuming the administrative judge applied the correct standard to the appellant's claim, he failed to apply it properly. PFR File, Tab 1 at 17-18.

<u>We remand this appeal for the administrative judge to comply with the proper procedures regarding the appellant's sex discrimination affirmative defense.</u>

On review, the agency argues that the administrative judge erred by raising the affirmative defense of sex discrimination on the appellant's behalf on the first day of the hearing. PFR File, Tab 1 at 25-26. We remand this issue for the administrative judge to follow the proper procedures for adding an affirmative defense after a prehearing conference at which he identified the issues in the case.

An appellant may raise a claim or defense not included in the appeal at any time before the end of the conference held to define the issues in the case. 5 C.F.R. § 1201.24(b). When an appellant waits until the hearing to raise a discrimination defense, the administrative judge must require the appellant to explain the delay and, if justified, must afford the agency an opportunity to show that considering that issue would unduly prejudice its rights. MSPB, Judges' Handbook, Ch. 9 § 6(c) (last updated October 2019) (Judges' Handbook). Even when good cause is shown, a defense not raised by the end of the conference held to define the issues in the case may be excluded if a party shows that including it would result in undue prejudice. 5 C.F.R. § 1201.24(b).

The administrative judge held a prehearing conference defining the issues in the case on August 8, 2024. IAF, Tab 27 at 1-2. Four days later, he issued a prehearing conference summary that identified the appellant's affirmative defenses as reprisal for EEO activity and disparate treatment based on disability. *Id*. at 4. He gave the parties 3 days to object, correct, or add to the order. *Id*. at 1, 6. The appellant did not do so.

In a notice dated August 14, 2024, the administrative judge apprised the parties that he had received an email from R.H., the deciding official in connection with the appellant's removal. IAF, Tab 29. He reiterated the contents

of the email, in which R.H. alleged that C.N. had not permitted R.H. to discipline a male employee for misconduct that R.H. compared to the misconduct for which the appellant was removed. *Id.* at 2. The following day, the administrative judge held a status conference at which he and the parties discussed R.H.'s email. IAF, Tab 30 at 1. The appellant did not raise a new affirmative defense at the status conference or during the next 4 days preceding the August 20, 2024 hearing.

During the hearing, the administrative judge stated that he had "added before the hearing here" an affirmative defense of "discrimination on the basis of gender." HT at 6 (statement of the administrative judge on the record). He did not explain how he came to add this affirmative defense or provide the parties with a chance to respond to his ruling. We remand this appeal for the administrative judge to follow the procedures above by providing the appellant with an opportunity to amend her appeal to include the affirmative defense of sex discrimination and providing the agency with a chance to respond. In its response, the agency may provide argument and evidence supporting its claim of prejudice.

The agency argues that the administrative judge failed to preserve the record when adding the sex discrimination affirmative defense. We agree. To preserve the record for review, an administrative judge should hold substantive discussions on the record or summarize the discussion and ask the parties to confirm the accuracy of the summary. Judges' Handbook, Ch. 10 § 13. However, an administrative judge's procedural error is of no legal consequence unless it is shown to have adversely affected a party's substantive rights. *Karapinka v. Department of Energy*, 6 M.S.P.R. 124, 127 (1981). Because we are remanding this appeal for the development of the record on this issue, we anticipate that any error in preserving the record will be cured, and we do not separately address this argument. Nonetheless, on remand, the administrative judge should make explicit findings as to whether to permit the appellant to proceed with this affirmative defense, including an explanation of his reasoning. *Spithaler v. Office of*

*Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (holding that to provide an adequate basis for review, each initial decision must address, among other things, all material legal issues in a fashion that reveals the presiding official's conclusions of law, legal reasoning, and the authorities on which that reasoning rests). The administrative judge should also address on remand the agency's argument that he did not follow ex parte communication procedures regarding R.H.'s email. PFR File, Tab 1 at 25; *see* 5 C.F.R. § 1201.103.

If, on remand, the administrative judge permits the appellant to proceed with an affirmative defense of sex discrimination, he should permit the parties to develop the record on this claim, including conducting discovery and submitting documentary evidence. The agency argues that the administrative judge erred by not allowing it to call C.N. to rebut the testimony of R.H. We agree.

The agency twice requested to call C.N., both times after the prehearing conference. First, the agency requested to call him the day after learning of R.H.'s email to the administrative judge. IAF, Tab 30. The agency renewed its request at the hearing. HT at 218-21 (statement of an agency representative at the hearing). The administrative judge denied these requests on the basis that the agency "had a much better chance" to anticipate R.H.'s testimony, and C.N.'s testimony was potentially prejudicial to the appellant."[6] HT at 221-22; IAF, Tab 30; ID at 13 n.13. We are unpersuaded that the agency's greater access to a witness requires it to anticipate that an appellant will assert an affirmative defense on the day of the hearing.

In light of our remand, we do not reach the agency's argument that the administrative judge's determination that R.H. was credible omitted a discussion

---

[6] We have reason to question the agency's access to R.H. in preparing its case. R.H. testified she had "stepped down" from her position in November 2023. HT at 72, 96-97 (testimony of R.H.). She further indicated that she was pursuing her own claims against the agency. *Id.* at 97. R.H. "stepped down" before the agency submitted its witness list in July 2024, and before the prehearing conference in August 2024. At one point, the agency sought to subpoena R.H. to testify because she "declined to testify." IAF, Tab 26 at 4.

of certain relevant factors. In making credibility determinations in his remand initial decision, the administrative judge should consider the factors in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), such as evidence contradicting R.H.'s version of events and her potential bias. PFR File, Tab 1 at 19, 25.

## ORDER

For the reasons discussed above, we remand this appeal for further adjudication in accordance with this Remand Order. On remand, the administrative judge may incorporate his prior finding that the agency met its burden to prove a nexus between the appellant's alleged misconduct and the efficiency of the service in the remand initial decision. If the administrative judge finds on remand that the appellant did not prove that the agency would have removed her absent sex discrimination, he should make a determination regarding the reasonableness of the penalty of removal for the sustained misconduct. *See Zepeda v. Nuclear Regulatory Commission*, 2024 MSPB 14, ¶ 31 (explaining that for status-based discrimination claims, in order to obtain full relief, an appellant must show that discrimination or retaliation was the "but-for" cause of the personnel action).

FOR THE BOARD:                     _____
                                   Gina K. Grippando
                                   Clerk of the Board

Washington, D.C.